KAREN P. HEWITT
United States Attorney
GEORGE V. MANAHAN
Assistant U.S. Attorney
California State Bar No. 239130
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: 619 557-5610 (Office); 557-5551 (Fax)
Email: george.manahan@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OCTAVIO RUIZ-GOMEZ; JORGE ACUNA-BETANCOURT; and JORGE AMES-BARR,<br><br>Defendants. | Criminal Case No. 08-MJ-0798-AJB<br><br>UNITED STATES' MOTION FOR RECONSIDERATION OF COURT'S ORDER TO DETAIN ALL ALIENS PRESENT AT TIME OF DEFENDANTS' ARREST |

COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney and George V. Manahan, Assistant United States Attorney, and hereby files the following Motion for Reconsideration of Court's Order to Detain All Aliens Present at Time of Defendants' Arrest.

**I**

**STATEMENT OF THE CASE**

**A.   INTRODUCTION**

Defendants Octavio Ruiz-Gomez, Jorge Acuna-Betancourt, and Jorge Ames-Barr (collectively "Defendants") have been charged by Complaint with a violation of 8 U.S.C. § 1324, that is, alien smuggling. At their initial appearance, Defendants moved this Court for an order requiring the retention

1  of all aliens who were present at the time of Defendants' arrest. The basis of Defendants' motion was
2  that their counsel wished to interview these aliens. The Court granted Defendants' motion and set a
3  status hearing regarding the potential witnesses for March 25, 2008 at 1:30 p.m. The United States now
4  moves this Court to reconsider and rescind its order since Defendants' motion had no basis in law and
5  failed to meet the requirements of either controlling U.S. Supreme Court precedent or 18 U.S.C. § 3144.

**B.    PROCEDURAL HISTORY**

On March 14, 2008, Defendants made their initial appearance and were arraigned on a Complaint charging them with a violation of 18 U.S.C. § 1324(a)(1)(A)(ii). At the initial appearance, the Court appointed Federal Defenders of San Diego, Inc. to represent defendant Ruiz-Gomez, Bernard G. Skomal, Esq. to represent defendant Acuna-Betancourt, and Carolyn L. Oliver, Esq. to represent defendant Ames-Barr. The Court also appointed Dorothy Shelton, Esq. to represent the three material witnesses, Braulio Gomez-Villa, Jose Luis Cruz-Quinones, and Mauricio Sanchez-Contreras (collectively, the "Material Witnesses"). Subsequently, Federal Defender Victor Pippins, on behalf of all three Defendants, moved the Court to order the United States to detain the other nine illegal aliens that were present with Defendants and the Material Witnesses at the time of Defendants' arrest. The Court granted the motion and set a status hearing for March 25, 2008.

Shortly after Defendants' initial appearance, Assistant United States Attorney George V. Manahan discovered that the nine other illegal aliens present with Defendants had already been voluntarily returned to Mexico by Immigrations and Customs Enforcement agents. Furthermore, it was discovered that all three Defendants had signed statements – commonly, but mistakenly, referred to as Lujan-Castro "waivers"[1] – in which Defendants stated that they did not believe any of the individuals in custody possessed information favorable to their cases. Defendants also stipulated in their Lujan-Castro statements to the deportation or removal of any unnamed individuals in custody. See Attachment #1-3 (Defendants' signed Lujan-Castro statements) and Attachment #4 (English-language translation of the Lujan-Castro statements). The illegal aliens present with Defendants, other than the three

---

[1] Although Defendant Ames' Lujan-Castro statement does not state the number of illegal aliens arrested with him or the date and time he signed the form, this form is not required by any law, as will be discussed later in this motion, and therefore these minor oversights are irrelevant.

Material Witnesses, were appropriately removed to Mexico, and therefore this Court should reconsider and rescind its order to have the United States retain all of the aliens present when Defendants were arrested.

## II

## **ARGUMENT**

As explained below, an order requiring a blanket retention of all illegal aliens present at the time of Defendants' arrest is contrary to both U.S. Supreme Court precedent and 18 U.S.C. § 3144, and thus should not stand. Defendants have no legal right to a blanket retention of undocumented aliens arrested in conjunction with their offenses. Indeed, once the United States makes a good faith determination that an alien possesses no evidence favorable to a defendant, it is legally *required* to promptly remove the alien. Consequently, Defendant's motion should have been denied, and the Court's order granting the motion must be rescinded.

### A.   DEFENDANTS HAVE NO RIGHT TO THE BLANKET RETENTION OF ALL ILLEGAL ALIEN WITNESSES

In 1971, the Ninth Circuit held that a defendant had a constitutional right to the retention of all alien witnesses. See United States v. Mendez-Rodriguez, 450 F.2d 1, 5 (9th Cir. 1971). Specifically, the Court held that the Government's deportation of illegal alien eyewitnesses, before the defendant had the opportunity to interview them, violated the Fifth and Sixth Amendments to the Constitution, even where the defendant could not show that the missing testimony would have been helpful. Id. Eight years later, the Ninth Circuit decided that a defendant can waive this alleged right. See United States v. Lujan-Castro, 602 F.2d 877, 878-79 (9th Cir. 1979).

In 1982, Mendez-Rodriguez's legal analysis was overruled by the Supreme Court in United States v. Valenzuela-Bernal, 458 U.S. 858, 860 (1982). In Valenzuela-Bernal, the Supreme Court reversed the Ninth Circuit, which had relied on Mendez-Rodriguez to overturn a defendant's alien smuggling conviction because the smuggled aliens had been deported. In so reversing, the Court held that: (1) the Government has the legal obligation to promptly deport illegal alien witnesses upon its good-faith determination that the witnesses possess no evidence favorable to the defendant; and (2) in order to establish a constitutional violation, a defendant must make a plausible showing that the missing testimony would have been favorable and material, in ways not merely cumulative to the testimony of

available witnesses. Id.. at 865-69.

In reaching its holding, the Supreme Court recognized that, in cases such as the instant case, the Government has the dual responsibility of "apprehending and obtaining the conviction of those who have violated criminal statutes" and "deport[ing] other persons involved in the event in order to carry out the immigration policies that Congress has enacted." Id. at 863-64. The Supreme Court emphasized the fact that the power and authority to regulate immigration has been entrusted "by the Constitution to the political branches of the Federal Government," and that Congress requires that the Government apprehend illegal aliens and promptly deport them. Id. at 864. As the Supreme Court noted, "Congress has determined that prompt deportation . . . constitutes the most effective method for curbing the enormous flow of illegal aliens across our southern border." Id. at 866. Thus, once the Government determines that an alien does not possess exculpatory evidence, the law requires that the alien be promptly deported.

Furthermore, the Supreme Court upheld the Government's prompt deportation of alien witnesses upon "practical considerations," noting that "the detention of alien witnesses imposes substantial financial and physical burdens upon the Government, not to mention the human cost to potential witnesses who are incarcerated though charged with no crime." Id. at 865.

In addition, the Court repeatedly stated that it is the Government, not the defense, which makes the determination of whether a particular alien possesses relevant and material information:

> "In addition to satisfying immigration policy, the prompt deportation of alien witnesses *who are determined by the Government* to possess no material evidence relevant to a criminal trial is justified by several practical considerations."

> "[T]he Government had good reason to deport respondent's passengers *once it concluded* that they possessed no evidence relevant to the prosecution or the defense . . . ."

> "[T]he responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress justifies the prompt deportation of illegal-alien witnesses *upon the Executive's good-faith determination* that they possess no evidence favorable to the defendant in a criminal prosecution."

Id. at 865-72 (emphasis added).

Indeed, the Supreme Court specifically contemplated that defendants will not automatically be permitted to interview all illegal alien witnesses. The Court rejected the Ninth Circuit's "conceivable

1  benefit" test, and required that, in order for a defendant to establish a constitutional violation, he must
2  make "some plausible showing of how [the witnesses'] testimony would have been both material and
3  favorable to his defense." Id. at 867. "The mere fact that the Government deports such witnesses
4  [without being interviewed by the defendant] is not sufficient to establish a violation of the Compulsory
5  Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment." Id. at
6  872-73. Moreover, a defendant is not unfairly prejudiced by the requirement that he demonstrate that
7  the witnesses' testimony would be helpful. As the Court pointedly noted, "it should be remembered that
8  respondent was present throughout the commission of this crime. No one knows better than he what
9  the deported witnesses actually said to him, or in his presence." Id. at 869.

10  Shortly after the Supreme Court's decision in Valenzuela-Bernal, the Ninth Circuit specifically
11  acknowledged that Mendez-Rodriguez had been overruled. See United States v. Marquez-Amaya, 686
12  F.2d 747, 747-48 (9th Cir. 1982). Indeed, in United States v. Dring, 930 F.2d 687, 689, 693-95 (9th Cir.
13  1991), the Ninth Circuit expressly relied on Valenzuela-Bernal to uphold the conviction of a defendant
14  where all eleven illegal alien witnesses were deported in accordance with normal procedures. The Ninth
15  Circuit recognized that the Supreme Court established a two-pronged test of bad faith and prejudice to
16  determine whether the deportation of alien eyewitnesses violates a defendant's Constitutional rights:

> Under this two-pronged test, the defendant must make an initial showing that the Government acted in bad faith [in deporting the eyewitness aliens] *and* that this conduct resulted in prejudice to the defendant's case. To prevail under the prejudice prong, the defendant must at least make "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses."

20  Id. at 693 (citing Valenzuela-Bernal, 458 U.S. at 873).

21  Furthermore, the Ninth Circuit rejected the defendant's argument that the Government must
22  show that it acted in good faith, but rather concluded that "it is the criminal defendant who bears the
23  burden of proving that the Government acted in bad faith." Id. at 694

24  Consequently, the law is now clear that defendants have no right to the blanket retention of all
25  illegal alien witnesses.

26  **B.    DEFENDANTS HAVE NO LEGAL RIGHT TO THE RETENTION OF THE NINE ALIENS IN THIS CASE**
27  Federal law enforcement agents are mindful of their "dual responsibility," as described by
28  Valenzuela-Bernal, to apprehend and obtain the conviction of those who violate criminal immigration

statutes and to expediently deport aliens involved in alien smuggling events in order to carry out the United States' immigration policies enacted by Congress. Steps are taken to ensure a good faith determination is made that an alien has no material, non-cumulative information helpful to the defendant before an alien witness is deported. First, based upon an examination of the facts and circumstances of the case and upon the statements of the illegal aliens, agents make a good-faith determination whether the aliens have any evidence helpful to defendants. Second, in an abundance of caution, and not required under any legal theory, defendants are often asked whether they think any of the undocumented aliens may have information favorable to them.[2] If a defendant indicates that any of the undocumented aliens arrested with him or her may have favorable information, the agents will re-evaluate whether or not that alien does, in fact, have any potentially helpful, non-cumulative information. The Immigration and Customs Enforcement agents who allowed the nine other aliens present at the time of Defendants' arrest to be voluntarily returned to Mexico followed these procedures and determined in good faith that the nine aliens did not have material, non-cumulative information helpful to Defendants, and therefore appropriately allowed the aliens to be voluntarily returned to Mexico.

Notably, Defendants are not without remedy if they can make the requisite two-part showing of materiality and bad faith set out in Valenzuela-Bernal. Indeed, if Defendants can demonstrate that an alien witness has material, relevant, and non-repetitive testimony, and if Defendants can demonstrate that the Government removed that alien in bad faith, then they have a panoply of remedies at their disposal. They may bring the appropriate motion for sanctions, to dismiss the charge, or for a new trial in the event of conviction. But absent a showing of both materiality and bad faith, these remedies simply do not come into play. Given that no such showing was made here, no remedy was called for or appropriate.

In short, Valenzuela-Bernal and Dring clearly hold that absent a showing by Defendants of both bad faith by the government and prejudice to Defendants because the deported aliens had material, favorable, non-cumulative information, Defendants are not entitled to either an order requiring the

---

[2] As noted above, this form that defendants then sign is commonly, although mistakenly, referred to as a Lujan-Castro "waiver" by both the Government and the defense bar. Such forms were filled out by the three Defendants in this case and are attached as Exhibits 1-3.

United States to retain additional aliens, or to any sanctions against the United States. Rather, the United States acted appropriately in following Congressional directives by promptly deporting to Mexico the nine other aliens present during Defendants' arrest.

### C. THE SEPARATION OF POWERS CLAUSE REQUIRES THE DENIAL OF DEFENDANT'S MOTION

This Court is without authority to countermand Congressional directives to the Executive branch and order the retention of alien witnesses who have not been shown to possess any evidence relevant, material, and non-cumulative to this criminal case. "The Court without exception has sustained Congress's plenary power to make rules for the admissions of aliens." Valenzuela-Bernal, 458 U.S. at 866 (citation omitted). Pursuant to that power, "Congress has adopted a policy of apprehending illegal aliens at or near the border and deporting them promptly." Id. The Separation of Powers clause of the Constitution requires this Court respect this policy, rather than counteract it with an order requiring the blanket retention of illegal aliens.

### D. THE PRACTICAL IMPACT OF GRANTING DEFENDANT'S MOTION IS SIGNIFICANT

The Court should also be swayed by practical considerations in determining that Defendants' motion should be denied. Notwithstanding established law that necessitates its denial, a contrary policy would have a significant adverse impact on the criminal justice system. In Valenzuela-Bernal, the Court recognized that, "the prompt deportation of alien witnesses who are determined by the Government to possess no material evidence relevant to a criminal trial is justified by several practical considerations." Id. at 865. The Court noted that during 1979, "almost one-half of the more than 11,000 inmates incarcerated in federal facilities in the Southern District of California were material witnesses who had neither been charged with nor convicted of a criminal offense." Id. The Court further acknowledged that "the detention of alien eyewitnesses imposes substantial financial and physical burdens upon the Government, not to mention the human cost to potential witnesses who are incarcerated though charged with no crime." Id.

At present, the Metropolitan Correctional Center ("MCC") operates at over 100% capacity. The U.S. Marshals Service is able to accommodate this significant level, in part, by contracting out the housing of material witnesses from the MCC to other contract facilities. For example, female and male juvenile material witnesses are sent to Casa San Juan until capacity is reached at a cost of $90.95 per

1  day. Female juvenile material witnesses are sent to Juvenile Hall at a cost of $143.79 per day. The
2  overflow adult male material witnesses are contracted out to Correctional Corporation of America
3  ("CCA") at a cost of $91.43 per day or to Global Enterprise in Outsourcing Western Regional Detention
4  Facility ("GEO") at a cost of $129.94 per day. In El Centro, material witnesses are initially housed at
5  the Imperial County Jail at a cost of $59.36 per day before being transferred to a local facility. Even
6  when material witnesses are kept at MCC and not sent to other contract facilities, there is still a
7  significant cost. First, the arresting agency must supervise these material witnesses until they are
8  booked into custody. Once booked into custody, the U.S. Marshals Service must supervise these
9  witnesses. Additionally, the witnesses are fed, clothed, and medically cared for by the correctional
10 facilities. In sum, there is a significant "real world" cost to granting Defendants' motion.

11 In 2004, the U.S. Attorney's Office for the Southern District of California ("USAO") prosecuted
12 506 cases charging 8 U.S.C. §1324, with 1,216 material witnesses that year. In 2005, the USAO
13 prosecuted 573 cases charging 8 U.S.C. §1324, with 1,227 material witnesses.[3] These statistics reflect
14 the number of witnesses retained *after* the Government determined that they possessed relevant and
15 material information. The statistics do not take into account the *total* number of aliens apprehended in
16 every § 1324 case. Indeed, the number of retained witnesses represents only a fraction of the total
17 number of aliens apprehended in any given § 1324 case. Thus, even requiring a brief detention of all
18 aliens discovered with every § 1324 defendant arrested would have a deleterious affect on an already
19 over-taxed criminal justice system in this district. See Valenzuela-Bernal, 458 U.S. at 865.

20 Ordering the retention of each and every smuggled alien upon the request of defense counsel will
21 drag the Southern District back to the pre-Valenzuela-Bernal days in which the federal facilities were
22 virtually clogged with illegal aliens who may or may not have any material information. An important
23 rationale behind the Valenzuela-Bernal decision was to prevent this practical result, and that rationale
24 remains just as valid today.

25 **E.    THE REQUIREMENTS OF 18 U.S.C. § 3144 HAVE NOT BEEN MET**

26 Finally, the Court's order requiring the United States detain the nine other aliens present at the

---

[3] The numbers of § 1324 cases charged in the Southern District of California have increased significantly each year since 2005.

time of Defendants' arrest contravenes 18 U.S.C. § 3144. In relevant part, 18 U.S.C. § 3144 states:

> If it appears from an <u>affidavit</u> filed by a party that the testimony of a person is <u>material</u> in a criminal proceeding, and if it is shown that it may become <u>impracticable</u> to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title.

18 U.S.C. § 3144 (emphasis added).

Thus, an individual can only be detained as a material witness if the party seeking detention of the witness files an affidavit demonstrating that: (1) the individual sought to be detained as a witness possesses material information; and (2) it may become impracticable to secure that person by subpoena. Only if these requirements are met may the court order an individual detained by issuing an arrest warrant for a material witness. See <u>Perkins. v. Click, et al.</u>, 148 F. Supp.2d 1177, 1182-83 (D.N.M. 2001) (citing <u>Bacon v. United States</u>, 449 F.2d 933, 937-39 (9th Cir.1971)); <u>United States v. McVeigh</u>, 940 F. Supp. 1541, 1562 (D. Colo. 1996); <u>United States v. Coldwell</u>, 496 F. Supp. 305, 307 (E.D. Okla. 1979); <u>United States v. Feingold</u>, 416 F. Supp. 627, 628 (E.D.N.Y. 1976). Here, however, Defendants have made *no* showing that any of the nine aliens possessed material information, and certainly have not filed an affidavit to that affect. Because Defendants failed to satisfy the threshold statutory requirements of § 1344, Defendants' motion and the resulting order are improper and, therefore, the Court's order should be rescinded.

### III

### CONCLUSION

For the reasons stated above, this Court should rescind its order.

DATED: March 19, 2008                                  Respectfully submitted,

                                                       Karen P. Hewitt
                                                       United States Attorney

                                                       s/ *George V. Manahan*
                                                       GEORGE V. MANAHAN
                                                       Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | Criminal Case No. 08-MJ-0798-AJB |
| Plaintiff,   ) | |
| )  | **CERTIFICATE OF SERVICE** |
| v.   ) | |
| )  | |
| OCTAVIO RUIZ-GOMEZ; JORGE   ) | |
| ACUNA BETANCOURT; and JORGE   ) | |
| AMES-BARR,   ) | |
| Defendants.   ) | |
| )  | |

IT IS HEREBY CERTIFIED THAT:

I, George V. Manahan, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Motion for Reconsideration of Court's Order to Detain All Aliens Present at Time of Defendants' Arrest on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Michelle Betancourt
   Email: michelle_betancourt@fd.org
   Attorney for Defendant Ruiz-Gomez

2. Bernard G. Skomal
   Email: bgskomal@aol.com
   Attorney for Defendant Acuna-Betancourt

3. Carolyn L. Oliver
   Email: coliver1@san.rr.com
   Attorney for Defendant Ames-Barr

4. Dorothy Rees Shelton
   Email: dsheltonlaw@aol.com
   Attorney for Material Witnesses Gomez-Villa, Cruz-Quinones, and Sanchez-Contreras

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 20, 2008.

S/*George V. Manahan*
GEORGE V. MANAHAN